THE STATE ex rel. MOSES MANN v. FRANCIS H.
TRIMBLE et al., Judges of Kansas City Court of
Appeals, and ALBERT CORNELIUS.

Division One, December 19, 1921.

1. CERTIORARI: To Court of Appeals: Conflict With Other Decisions
of Courts of Appeals. In a *certiorari* to a court of appeals, based
on a conflict of its opinion with previous controlling decisions of
the Supreme Court, any alleged conflict between said opinion and
other decisions of courts of appeals will be disregarded.

2. MALICIOUS PROSECUTION: Instruction: Mandatory Direction
for Punitive Damages. In an action for damages for malicious
prosecution, an instruction telling the jury that ''if you should find
the issues for the plaintiff you may take into consideration in
estimating his damages and award him such sum as will compen-
sate him for mental anxiety, . . . together with such sum as
you may, from the evidence, believe the defendant should be pun-
ished with,'' was not a mandatory direction to award punitive dam-
ages, and the opinion of the Court of Appeals approving said in-
struction was not therefore in conflict with the decision in Nichol-
son v. Rogers, 121 Mo. l. c. 141, in which the question of actual or
express malice was not present.

3. ———: ———: Dismissal of Information: Persuasive Evidence of
Lack of Probable Cause. In an action for damages for malicious
prosecution, where the plaintiff had been arrested for petit lar-
ceny at the instigation of defendant and the case subsequently
dismissed, an instruction telling the jury, among other things, that
''the issue is whether from the facts and circumstances given in
evidence the defendant acted maliciously and without probable
cause, and on this issue you are further instructed that the discharge
of the plaintiff or the dismissal of the information by the prose-
cuting attorney is evidence that the prosecution was without prob-
able cause, but not conclusive of the fact,'' is not in conflict with
Smith v. Burrus, 106 Mo. l. c. 99, for the reason that the dismissal
of the suit there involved was a civil action for slander, and upon
*certiorari* the Supreme Court is only concerned with whether the
Court of Appeals, upon the facts stated in its opinion, announced
some conclusion of law contrary to the last previous ruling of the
Supreme Court upon the same or a similar state of facts. But
however the doctrine was announced in the said case of Smith

State ex rel. Mann v. Trimble.

v. Burrus, the opinion of the Court of Appeals approving said instruction was not contrary to the last previous ruling of the Supreme Court, for it was held in the recent case of Hauser v. Bieber, 271 Mo. 326, that the acquittal of a plaintiff in the criminal prosecution constituted "persuasive evidence of a want of probable cause," and if an acquittal is such, a dismissal of a criminal information, is more so.

4. ———: ———: **Definition of Probable Cause: Cautious Person: Cured by Others.** In an action for damages for malicious prosecution an instruction telling the jury that "by probable cause is meant a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the accused is guilty of the offense of which he is charged" is not a wrongful definition of probable cause, and is not in conflict with Boeger v. Langenberg, 97 Mo. l. c. 396, but if it were its counterpart was approved in the later case of Fugate v. Miller, 109 Mo. l. c. 285, 290, and therefore the Court of Appeals did not contravene the rule in approving it. The use of the word "cautious" instead of "reasonable and cautious" was not a substantial or material difference, but even if said qualificaton of the word "cautious" was necessary it was supplied, as ruled by the Court of Appeals, by an instruction asked by defendant which defined probable cause as such circumstances as would induce such belief in the mind of an "ordinarily reasonable and cautious person," etc.

5. ———: **Larceny: Replevin as Evidence: No Exception.** In an action for damages for malicious prosecution, where the plaintiff had in a replevin suit recovered the property which he was charged in the criminal information with having stolen, wherein the petition was filed after the issuance of said information, a statement in its opinion by the Court of Appeals that no exception was saved to the ruling of the trial court admitting in evidence the judgment in the replevin suit, precludes a consideration on *certiorari* of the question whether said ruling was error, and also precludes a consideration of the further question whether said opinion was in conflict with certain prior decisions of the Supreme Court in which relator contends it was decided that such judgment was not admissible.

*Certiorari.*

WRIT QUASHED.

*Randolph & Randolph, Dudley, Selby & Brandom* and *Hewitt & Hewitt* for petitioner.

(1) Instruction No. 10 given for the plaintiff is in conflict with Nicholson v. Rogers, 129 Mo. 141; Ruth v. St. Louis Transit Co., 98 Mo. App. 18; Bosch v. Miller, 136 Mo. App. 493. That instruction is a direction to the jury to award both actual and punitive damages and is clearly in conflict with the authorities cited. (2) Instruction No. 9 is clearly in conflict with Smith v. Burrus, 106 Mo. 99. In that case the court said: "And the mere discontinuance of a criminal prosecution, or the acquittal of the accused, will establish for the purpose of this suit neither malice nor want of probable cause." The instruction is also in conflict with Eckerle v. Higgins, 159 Mo. App. 186. In the face of those decisions, Instruction No. 9 told the jury that the dismissal of the information by the prosecuting attorney was evidence that the prosecution was without probable cause. (3) Instruction No. 2 is clearly in conflict with Boeger v. Langenberry, 97 Mo. 396, and Wilkerson v. McGhee, 153 Mo. App. l. c. 349. (4) The judgment in the replevin suit of Mann v. Cornelius, a case that was tried after the arrest, is held by the Court of Appeals to be competent evidence in the case. The replevin suit was a subsequent adjudication, had not been begun when the arrest was made, and the case should rather have been submitted upon the question as to whether or not the tank belonged to the real estate, and as to whether or not the defendant under all the facts and circumstances was justified in believing that the tank belonged to him. That ruling is clearly in conflict with Carp. v. Ins. Co., 203 Mo. 295, 338; Vansickle v. Brown, 68 Mo. 627, 632; Kennedy v. Holloway, 25 Mo. App. 514.

*L. W. Reed, Thos. H. Hicklin* and *Scott J. Miller* for respondent.

(1) The instructions in the Nicholson case absolutely direct a verdict for punitive damages and this

in plaintiff's instruction is certainly left to the discretion of the jury. Instruction No. 10 was copied from the case of Fugate v. Millar, 109 Mo. 278. (2) The next instruction criticised by the petitioner is No. 9 given on behalf of plaintiff as being in conflict with Smith v. Burrus, 106 Mo. 99. In the case of Williams v. Van Meter, 8 Mo. 339, it is held at page 342, "that the acquittal of plaintiff in the cause for which he was bringing suit for malicious prosecution was proper evidence to go to the jury on the question of want of probable cause, but that of itself and unaccompanied with any circumstances would be insufficient, and the Williams case is approved and quoted from in the recent case of Hanser v. Bieber, 271 Mo. 342, where it is held that such evidence is competent, and which expressly approves the opinion in Christian v. Hannah, 58 Mo. App. 37, holding to 'the same effect; that is, that evidence of the acquittal or discharge of defendant in the suit on which the malicious prosecution case is based is competent evidence of lack of probable cause. The above cases hold and we believe it is unquestionably the law of this State that testimony as to the acquittal of plaintiff in this case, defendant in the larceny case on which this suit is based, was competent evidence to go to the jury on the question of lack of probable cause. (3) Next petitioner complains that plaintiff's Instruction No. 2 is in conflict with Boeger v. Langenberry, 97 Mo. 393-7, and the case of Wilkerson v. McGhee, 153 Mo. App. 349, and seems to base most of their complaint on the fact that Instruction No. 2 employs the language in defining probable cause "a cautious man" while in the Boeger-Langenberry Case the words "a person of ordinary prudence" is used and in the Wilkerson-McGhee Case the words "reasonable and cautious man" is used. The case of Fugate v. Miller, 109 Mo. 285, uses the words "a cautious man," the same as does this instruction, and being a later case than that of Boeger v. Langenberry, supra, the Court of Appeals probably followed it. (4) And lastly, petitioner complains that the judgment in the replevin suit of Mann v.

Cornelius was held to be competent evidence in the case by the Court of Appeals and cited authorities to show that it was not. Petitioner here on the trial strenuous-ly objected to the introduction of the records of the replevin suit; after his objections were overruled and the record admitted in evidence, he failed to save any exceptions to the ruling of the court, hence was in no position to raise the question in the Court of Appeals and is not now in such position in this court.

ELDER, J.—Relator seeks by writ of *certiorari* to review the opinion of the Kansas City Court of Appeals and quash the judgment entered by that court affirming a judgment for $750 actual and $250 punitive damages rendered by the Circuit Court of Dekalb County in an action for damages for malicious prosecution brought by one Albert Cornelius against Moses Mann (relator herein).

The evidentiary facts in the case are thus stated in the opinion of the Court of Appeals:

"Defendant caused an information to be filed in the Circuit Court of Daviess County by the prosecuting attorney of that county, charging plaintiff with stealing a 'steel tank of the value of $17.50.' A warrant was issued and plaintiff arrested. The case was thereafter dismissed, and plaintiff thereupon brought this action for malicious prosecution and obtained judgment for both actual and punitive damages.

"It appears that plaintiff bought a farm from defendant, principally on deferred payments. A steel water-tank was on the place, so situated in a fence as to form a part thereof and so arranged as to be a facility in watering stock. After occupying the farm for two years it became apparent that he could not pay for it, and he re-sold or deeded it back to defendant, remaining in possession another year as defendant's tenant. When plaintiff had taken possession after his purchase of the farm, defendant came to him and told him which of several articles of property did or did not go with the

farm under the deed. Among other things he told him the tank did not, but that he would give it to plaintiff, and the latter kept and used it. When plaintiff's year as defendant's tenant expired he moved to a place he had rented, which was about ten miles away in another county, and he took the tank now in controversy with him. It was this taking that defendant claimed was the asportation which he called the theft of the tank, and upon which he based his instigation of the prosecution.

"Shortly after plaintiff was arrested defendant instituted an action of replevin for the tank in the county to which it had been taken by plaintiff. The final result of these actions, civil and criminal, was that the former was decided for this plaintiff and the latter was dismissed.

"There was evidence tending to show that before making affidavit to the information filed against plaintiff, defendant laid the facts before the prosecuting attorney and he advised that a crime had been committed."

Relator assigns as error: (a) The giving of four certain instructions for plaintiff, which are claimed to be in conflict with controlling decisions of this court, and (b) the admission in evidence of the judgment in the replevin suit mentioned in the opinion, contrary to previous rulings of this court. These alleged errors we shall discuss *seriatim*. In view, however, of our well established rule to disregard, on *certiorari,* any alleged conflict with opinions of the several Courts of Appeal, we shall not advert to the decisions of Courts of Appeal cited by relator in behalf of the relief sought.

*Conflict With Other Opinions of Courts of Appeals.*

I. With reference to the instructions, the Court of Appeals, in its opinion, has the following to say:

"A number of instructions were given by the trial court for each party and a number offered by defendant were refused. Complaint is made of the action of the court in giving those for plaintiff and in refusing those refused for defendant. All-told there were eighteen or

*Instructions: Actual and Punitive Damages.*

twenty given, and there were eight refused for defendant.

"Those given for plaintiff properly covered every phase of a case of this nature. Malice and probable cause are defined, and so is defendant's duty in seeking the advice of the prosecuting attorney as to the guilt of plaintiff; and to these was added a definition of petit larceny as applied to the taking of the water tank. [Fugate v. Millar, 109 Mo. 281.]

"Those given for defendant were the converse of those for plaintiff, and were made applicable to those matters of defense which would authorize and make necessary a verdict for defendant. There can be no doubt that taking all the instructions together as a series (Fugate v. Miller, supra) they put the case for both sides in such way as to leave no room for misunderstanding by the jury.

"There is much in those refused which is found in those given and there was no necessity for repeating.

"All in those refused which was proper was included in instructions given."

Relator contends that Instruction No. 10 is in conflict with Nicholson v. Rogers, 129 Mo. 1. c. 141, for the reasons that the instruction "is a direction to the jury to award both actual and punitive damages," that "the jury must first find actual or express malice before they may in their discretion award punitive damages," and that "punitive damages are furthermore entirely in the discretion of the jury." Instruction No. 10 is as follows:

"The court instructs you that if you should find the issues for the plaintiff you may take into consideration in estimating his damages, and award the plaintiff such sum as will compensate him for mental anxiety, occasioned by reason of said charge, and for mental suffering occasioned by said arrest, if you believe such was the case; together with such damages as you may, from the evidence, believe the defendant should be punished with, taking also into consideration the defendant's ability, his position in society, his standing in the community,

not, however, exceeding the amount sued for, seven thousand five hundred dollars ($7,500)." A scrutiny of the instruction held erroneous in Nicholson v. Rogers, supra, discloses that it read in part as follows:

"The jury *must* assess such an amount of damages in his behalf as they may deem proper under the view of the whole case to compensate him for the mortification and shame he may have suffered, . . . *as well as to punish the defendant for his wrongful and malicious conduct.*" (Italics ours).

As the court there said, "the instruction undoubtedly directs the jury, as though defendant was entitled to punitory damages as a matter of legal right." Such instruction was clearly mandatory. But the instruction under review is not mandatory. The language is, "If you should find the issues for the plaintiff you *may* take into consideration . . . together with such damages as you *may,* from the evidence, believe the defendant should be punished with," etc. Manifestly the jury were left free to exercise their discretion.

The question of actual or express malice not being present and having not been ruled on in the Nicholson case, there can be no conflict with the opinion of the Court of Appeals on that score.

The point made must accordingly be ruled against relator.

II. Relator next urges that Instruction No. 9 is in conflict with Smith v. Burrus, 106 Mo. 99, for the reason that the instruction told the jury that "the dismissal of the information by the prosecuting attorney was evidence that the prosecution was without probable cause." Instruction No. 9 is as follows:

Evidence of Probable Cause: Dismissal of Prosecution.

"The court instructs the jury the issue for them to try in this case is not the guilt or innocence of Albert Cornelius of the crime alleged against him in the affidavit, but the issue is whether from the facts and circumstances given in the evidence the defendant acted

maliciously and without probable cause, and on this
issue you are further instructed by the court that the
discharge of the plaintiff or the dismissal of the infor-
mation by the prosecuting attorney is evidence that the
prosecution was without probable cause, but not con-
clusive of that fact.''

While the case cited would at first impression seem
to substantiate relator's insistence, nevertheless, a fur-
ther investigation serves to demonstrate its unavaila-
bility. The reasoning of the rule there announced is
predicated upon an extract from Cooley's Law of Torts,
reading in part; ''And the mere discontinuance of a
criminal prosecution, or the acquittal of the accused, will
establish for the purposes of this suit neither malice nor
want of probable cause.'' However, this doctrine is in
part contrary to our most recent pronouncement in Han-
ser v. Bieber, 271 Mo. 326, where WALKER, J., upon a
thorough review of the cases bearing upon the subject,
speaking for the court, said, at page 342: ''Holding,
as we do, that the judgment of conviction here does not
constitute probable cause, it follows that the acquittal of
the plaintiff in the Court of Criminal Correction *consti-
tuted, under our rulings, persuasive evidence of want of
probable cause,''* citing several prior decisions so hold-
ing. (Italics ours). Hence, if an acquittal is persuasive
evidence of want of probable cause, by a parity of reason-
ing the same rule should apply upon the dismissal of a
criminal information. The ensuing conclusion, there-
fore, is that the instruction complained of by relator is
in harmony with our latest and controlling decision.

Furthermore, it cannot be said that the instruction
is in conflict with the Smith case, supra, for the reason
that the dismissal of the suit there involved was a civil
action for slander instead of a criminal proceeding as
here, and, as we have often ruled, on *certiorari* to the
Courts of Appeal we are only concerned with whether
upon the facts stated in its opinion, the Court of Appeals
announced some conclusion of law contrary to the last
previous ruling of this court upon the same or a similar

state of facts. [State ex rel. American Packing Co. v.
Reynolds, 287 Mo. 697; State ex rel. Peters v. Reynolds,
214 S. W. l. c. 122; State ex rel. Mechanics Amer. Natl.
Bank v. Sturgis, 208 S. W. l. c. 462; Majestic Mfg. Co.
v. Reynolds, 186 S. W. 1072.]

III.   Relator further insists that Instruction No. 2
is in conflict with Boeger v. Langenberg, 97 Mo. l. c. 396,
397. Instruction No. 2 is as follows:

"By probable cause is meant 'a reasonable ground
of suspicion supported by circumstances sufficiently
strong in themselves to warrant a cautious
man in his belief that the accused is guilty
of the offense with which he is charged.'
'Malice' means a wrongful act done intention-
ally, without legal justification or excuse."

Probable Cause: Definition.

Probable cause, as relied upon by relator, is thus
discussed and defined in the Boeger case, supra: "A
definition of probable cause sufficiently exact to meet
satisfactorily every possible test would be difficult, if not
impossible, to furnish. The complete legal idea expressed
by that term is not to be gathered from a mere definition.
But, perhaps, with reference to many practical cases, it
may be nearly accurate to say that probable cause con-
sists of a belief in the charge or facts alleged, based on
sufficient circumstances to reasonably induce such belief
in a person of ordinary prudence in the same situation."
Relator's particular objections to the instant instruction,
and the comment of the Court of Appeals thereon, are
thus expressed in a supplemental opinion of the court,
rendered upon a rehearing granted in the case:

"Instruction No. 2, defining probable cause, is ob-
jected to on the ground that it prescribes too strong a
test of defendant's belief in plaintiff's guilt, when he
begun the prosecution. The particular complaint is that
the instruction declares that to justify a belief in plain-
tiff's guilt the circumstances must be 'sufficiently strong
in themselves to warrant a *cautious* man in his belief
that the accused is guilty of the offense with which he is

charged.' Defendant claims that the word 'cautious' should have been qualified so as to read 'reasonable and cautious.' We think the criticism is hypercritical. Especially is this true when defendant himself had the court give Instruction No. 4 defining probable cause as such circumstances as would induce such belief in the mind of an *ordinarily reasonable* and *cautious person.*' We are aware that instructions for one party should not be contradictory of instructions on the same subject for the other party. But these are certainly not of that character.''

The conclusion of the Court of Appeals comports with our views, particularly with relation to the alleged conflict being cured by the giving, at the instance of relator, of Instruction No. 4, the relevant portion of which is as follows:

''You are instructed that the term 'probable cause' as used in these instructions, means belief by defendant, Mann, in the guilt of the plaintiff, based upon such facts and circumstances as would induce such belief in the mind of an ordinarily reasonable and cautious person.''

Furthermore, an instruction defining ''probable cause,'' of which the instant instruction is a counterpart, was held not misleading in Fugate v. Millar, 109 Mo. 1. c. 285, 290, decided later than the Boeger case.

A like claim of error with respect to Instruction No. 1 is also pressed upon our attention. Such claim, however, has less merit than the insistence with respect to Instruction No. 2.

We must accordingly disallow both claims.

IV. Relator finally contends that the judgment rendered in the replevin suit, which was filed after the issuance of the information in the criminal prosecution, was improperly admitted in evidence, contrary to rulings of this court in Carp v. Insurance Company, 203 Mo. 295, 1. c. 338, and Vansickle v. Brown, 68 Mo. 627, 1. c. 632, 633.

Ruling on
Evidence:
Replevin:
No Exception.

The opinion of the Court of Appeals bearing upon the admission of said judgment is as follows:

"Much complaint is made of the rulings of the trial court on the evidence and of the impropriety of remarks made by the court and misconduct of counsel for plaintiff. An examination shows that to the rulings on the principal part of these matters no exceptions were taken; and in the few instances where exception was taken no reason is given for the objection. Much space is taken up in the endeavor to show objectionable matter which we think is without a sound foundation. Chief among these is complaint against court and counsel in reference to the replevin suit to which we have already referred. This we find so intimately connected with the issues in the present case as to have been proper as well as unavoidable."

While we do not fully concur in the reasoning of the Court of Appeals, nevertheless, the opinion having directed our attention to the fact that no exception was taken as to the ruling of the court on the admissibility of the evidence complained of, we hold to the belief that the Court of Appeals arrived at the correct result. Had exception been saved, a conflict with the cases cited might have been engendered. But even so, such conflict alone would have scarcely been sufficient to have warranted our quashing the judgment of the Court of Appeals as an entirety.

A painstaking review of all of the questions ably presented by learned counsel for relator serves to convince us that the writ herein was improvidently granted and should be quashed.

It is so ordered. All concur, except *J. T. Blair, J.*, who dissents.