GERALD THOMAS BONZO, Appellant, v. KROGER GROCERY & BAKING COMPANY, a Corporation, and EDGAR A. FUHR, Respondents.— 125 S. W. (2d) 75.

Division Two, February 21, 1939.

*Fred Berthold, Berthold & Chase* and *Louis P. Wagner, Jr.,* for appellant.

*Harold F. Hecker, Lyon Anderson* .and *Roby Albin* for respondents; *Leahy, Walther, Hecker & Ely* of counsel.

BOHLING, C.—Action for malicious prosecution. The petition is in two counts, each count praying damages in the amount of $50,000 ($25,000 actual and $25,000 punitive). Cast on demurrer at the close of his evidence, plaintiff appeals.

Edgar A. Fuhr was in charge of the grocery department of a store of the Kroger Grocery and Baking Company, a corporation, located at 1239 Sutter Avenue, University City, St. Louis County, Missouri. Louis Gephardt was in charge of the meat department of said store. Fuhr and the corporation are defendants. About 7:20 A. M. on May 11, 1927, two young men entered the store and, by means of a gun, took approximately $70 in money, the property of the corporate defendant. About 6:20 A. M. on June 22, 1927, at Woodson and Sutter Streets, two men using a gun, robbed Fuhr, while he was on his way to work, of approximately $98, also the property of the corporate defendant. On July 2, 1927, Gerald T.

Bonzo, plaintiff, entered said Kroger store and Fuhr recognized him as one of the parties who had committed the robberies. After Bonzo's departure Fuhr made inquiry and ascertained the name of Bonzo. We understand another robbery occurred at the Kroger store on July 7, 1927, and that Fuhr again recognized defendant as one of the offenders.

Upon separate affidavits signed by Fuhr, dated October 11, 1927, charging plaintiff with the offense of robbery in the first degree, in one, on May 11th and, in the other, on June 22, 1927, plaintiff was arrested under warrants issued. In the interim between the robberies and the issuance of the warrants, we understand the police informed Fuhr they had a letter advising that plaintiff was at Linn, Missouri, on July 7, 1927. On October 14th in each of said proceedings, the Justice of the Peace found "that defendant Gerald T. Bonzo is under the age of seventeen years, and this cause is accordingly certified to the juvenile division of the circuit court of St. Louis county for further adjudication." On October 28, 1927, the circuit court, juvenile division, after a hearing, entered its findings and orders in each of said proceedings stating that "there is probable cause to believe that the said defendant is guilty of the charge of robbery, 1st degree, as charged in the information herein and it is ordered that said defendant be held over to await the action of the grand jury." Thereafter, and under date of November 17, 1927, the prosecuting attorney of St. Louis County, Missouri, filed separate informations charging Bonzo, under the general law, with first degree robbery, in one, on May 11th, and, in the other, on June 22, 1927; and the record discloses another entry of the "circuit court, juvenile division," under date of January 6, 1928, wherein, after a hearing, said court, juvenile division, finds in each of said proceedings that "defendant is not guilty."

Each count of plaintiff's petition charges that the statements of fact in Fuhr's affidavits and the testimony of Fuhr and the agents of defendant corporation as to the facts at each of said proceedings in the circuit court, juvenile division, were false, fraudulent and perjured.

To sustain said allegations plaintiff testified that he did not commit any of the robberies and, adducing corroborating testimony from other witnesses, that at the time of the robberies on May 11th and June 22nd he was at the Fulton Iron Works Company, and on July 7th at Linn, Missouri, where he remained until sometime in September or October, 1927. He admitted being in said Kroger store on July 2nd, but testified he left for Linn, Missouri, on July 3rd. Plaintiff and his father were employed at the Fulton Iron Works; the father reporting for work at 7 A. M., while plaintiff's duties required his presence at 8 A. M. The Iron Works was located ap-

proximately six or seven blocks from the Kroger store and approximately two and one-half blocks from Woodson and Sutter Avenues. Plaintiff testified he accompanied his father to work. On May 11th plaintiff "punched" the time clock of said Iron Works at 6:37 A. M., and on June 22nd, at 7:30 A. M. He testified he remained at the Iron Works and assisted his father until it was time for him to perform his own duties. According to plaintiff's testimony he was identified as one of the robbers on May 11th by both Fuhr and Gephardt prior to the proceedings in the circuit court, juvenile division, and as one of the robbers of June 22nd by Fuhr. He said: "There wasn't any doubt about Mr. Fuhr's identification of me at the store. He said positively that it was me. And at these hearings Mr. Fuhr picked me out right away, and so did Mr. Gephardt."

The litigants agree that the constitutive elements of an action for malicious prosecution are: "(1) The commencement or prosecution of the proceedings against him or her; (2) its legal causation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage to plaintiff by reason thereof." [Higgins v. Knickmeyer-Fleer R. & Inv. Co., 335 Mo. 1010, 1025(2), 74 S. W. (2d) 805, 812(1).]

As submitted the case turns on the probative value of the testimony on the issues of want of probable cause and malice. Plaintiff says there was substantial testimony on the issue of want of probable cause and that malice may be inferred from want of probable cause.

Plaintiff cites and quotes from Randol v. Kline's, Inc. (Div. 2), 322 Mo. 746, 761(d), 18 S. W. (2d) 498, 507(16), and LaChance v. National Pigments & Chemical Co. (Mo. App.), 104 S. W. (2d) 693, 699(9). From the Randol case: "The subsequent acquittal of plaintiff in the appellate court, on appeal from a conviction in the police court, rendered the question of probable cause a matter for the jury to decide, as we have determined. And, in connection with other circumstances in the case, plaintiff's acquittal in the appellate court was evidentiary of the want of probable cause."

In Ex parte Bass, 328 Mo. 195, 200, 40 S. W. (2d) 457, 459(2), this court en banc said: ". . . in State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S. W. (2d) 124, a juvenile court's jurisdiction in such a case [proceedings involving delinquent children] ceases upon its determination and direction that the defendant shall be proceeded against, not as a delinquent but, under the general criminal law." The Bass case held that, after an order in the circuit court, juvenile division, had been made directing that the accused be proceeded against, not as a delinquent but, under the general criminal law, a commitment thereafter issued out of said

court, juvenile division, on a judgment imposing a penitentiary sentence upon a plea of guilty, under which commitment the accused was being held in the penitentiary, was void. It follows that the second judgment in the instant case of the circuit court, juvenile division, finding the present plaintiff not guilty, is of no probative value.

Reverting briefly to plaintiff's position and herein also of defendant's position, set forth in the quotation from Wilcox v. Gilmore, infra.

The LaChance case, supra, cites the Randol case (first and second appeals) and also Wilcox v. Gilmore, infra. Hanser v. Bieber (Banc), 271 Mo. 326, 197 S. W. 68, also involved an appeal and an acquittal from a conviction for petit larceny in the justice court and a *nolle prosequi* by the prosecuting attorney upon appeal, and a reading of the facts in the malicious prosecution suit discloses substantial affirmative testimony supporting the tendered issues of ''fraudulent, false and perjured testimony.'' The same may be said of the Randol case; see, for instance, 322 Mo. 746, 759(a), 18 S. W. (2d) 500, 506(a), on first appeal, and 330 Mo. 343, 349(I), 49 S. W. (2d) 112, 114(3), on second appeal. In each of said cases, as also in Hanser v. Bieber, supra, it is to be noted that the witnesses for the prosecution and the witnesses for the defense had equal knowledge of the material facts in dispute and two conflicting versions of the material facts involved could not be true. It might be that in such circumstances the issue of want of probable cause could well pivot on the veracity of the witnesses, supplemented by a showing as to false testimony by defendants at the first trial. State ex rel. Mann v. Trimble, 290 Mo. 661, 232 S. W. 100, was on certiorari and the court found no conflict in rulings. Plaintiff's cases do not rule this case. Although Graves, C. J.'s opinion in the Hanser case was concurred in by only one associate, we think the following therefrom, speaking to a conviction in the police court, to be good law: ''The finding of a true bill by a grand jury and the commitment by a committing magistrate stand upon different footings. From neither is there an appeal allowed. They are final. . . .'' [271 Mo. l. c. 345, 197 S. W. l. c. 74.] If, upon the first hearing before the circuit court, juvenile division, the judge believed the instant plaintiff innocent, he should have discharged him; but it was within his discretion, under Sec. 14163, Revised Statutes 1929, Mo. St. Ann., p. 875, upon his expressed finding of probable cause to believe said plaintiff guilty, to order that plaintiff be ''prosecuted under the general law.''

■ Wilcox v. Gilmore (Div. 1), 320 Mo. 980, 986, 8 S. W. (2d) 961, 962(1-3), was an action for malicious prosecution arising from a civil case wherein, upon appeal, a judgment for the plaintiff in the first suit had been reversed. We quote the rule and reasons

there announced: "With the necessary changes in points of detail, the same principles determine questions of probable cause in civil proceedings as in criminal. [38 C. J. 417.] The weight of authority is that a judgment or finding in favor of plaintiff in the original action is conclusive evidence of probable cause, or estops defendant therein from denying the existence of probable cause, in the absence of fraud or other improper means used in obtaining the judgment, and it has been held that the conclusiveness of the judgment on the question of probable cause is not affected by the fact that it is erroneous, or by the fact that it is reversed on appeal to a higher court, or set aside for irregularity. [38 C. J. 419.] In the Missouri decisions, such prior judgment is generally spoken of as prima facie evidence of probable cause, which may be rebutted or overthrown by evidence that such judgment or commitment was obtained by false or fraudulent testimony, or other improper means, or that the prosecutor himself did not believe the facts alleged in support of the prosecution. . . . [Citing Missouri cases.]

"The reason of this rule is apparent. If probable cause consists of a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation, then proof of a judgment, whether based on the verdict of a jury or the finding of the trial judge, stands as undisputed evidence of the existence of probable cause, unless it be further shown that the judgment was procured by fraud, corruption, false testimony, or other improper means, or that those responsible for the prosecution did not themselves believe the facts and circumstances alleged and brought forward to induce the judgment. Nor does such a judgment cease to be evidence of the existence of probable cause merely because it is subsquently reversed on appeal. While a contrary view was expressed by Graves, C. J., in a separate concurring opinion, concurred in only by Woodson, J., in Hanser v. Bieber, 271 Mo. l. c. 344, 197 S. W. 68, such view is clearly beyond the holding of the majority opinion and not controlling. As a matter of fact, no opinion in the Bieber case received the full concurrence of a majority of the court.

". . . The trial court did not err because the result of this appeal did not destroy or change the evidentiary value of the judgment appealed from on the question of probable cause."

Laughlin v. St. Louis Union Trust Co. (Div. 1), 330 Mo. 523, 529(5), 50 S. W. (2d) 92, 94(5), is to the same effect as Wilcox v. Gilmore, supra. Higgins v. Knickmeyer-Fleer R. & Inv. Co., 335 Mo. 1010, 1026, 74 S. W. (2d) 805, 812(3, 4, 5), a case involving the voluntary dismissal of a criminal charge by the prosecuting attorney, follows the Laughlin case, supra. See Annota-

tions in L. R. A. 1916F, 196(II), 201(III), 97 A. L. R. 1022, 1027; and, generally, Annotations in 24 A. L. R. 262(I), 288(V.), Rule in Missouri; 94 A. L. R. 745(I), 750(V); 114 A. L. R. 886(I), 888(V); 64 L. R. A. 474.

Dawes v. Starret, 336 Mo. 897, 82 S. W. (2d) 43, cited by plaintiff, involved an acquittal under an indictment. In the malicious prosecution suit there was substantial evidence on the issue of the State's witness' failure to disclose the true facts to the grand jury. [See 1. c. 921 and 54(2), respectively.] It states a like rule of law with respect to indictments as the Wilcox and Laughlin cases, supra, state with respect to a judgment reversed upon appeal. [See 905(1) and 45(1), respectively.] The facts differ from the instant case, and it does not aid plaintiff here.

Plaintiff also relies upon testimony that subsequent to his arrest he and his mother advised defendants that plaintiff was working at the Fulton Iron Works Company on May 11th and June 22nd, and was at his grandparents at Linn, Missouri, in July of 1927. This testimony goes to establish an alibi and the innocence of plaintiff. Innocence or guilt may become important during the progress of the trial of a malicious prosecution suit but is not an issue in chief. Stubbs v. Mullholland, 168 Mo. 47, 89(7), 67 S. W. 650, 663(7), differs materially from the instant case, but states: "This testimony [strongly tending to establish plaintiff's innocence] was properly rejected because the *innocence* of one who sues for malicious prosecution is not at all involved in such suit; the real question being whether the prosecutor had reasonable cause for believing the accused guilty." [See, also, Wilkinson v. McGee, 265 Mo. 574, 582, 178 S. W. 471, 473.]

We quote from Miller v. Chicago, M. & St. P. Railroad Co. (West. Dist. of Mo.), 41 Fed. 898, 910, on the necessity of investigating an alibi: "The law of self-preservation, the instinct of human nature itself, would lead a man to believe that the party thus accused, even if guilty, would say he was not guilty, and that he might resort to the common defense, in such cases, of an alibi. The law would not exact of a prosecuting witness such diligence and vigilance as to do a thing which no reasonable man under like circumstances would do. No man, in working up a case, goes to the party accused to see if he is guilty, but ordinarily keeps his investigation to himself. He does not let the party suspected know of the investigation, for fear he may escape, until he is ready to have the capais served upon him."

Aside from the possibility of one traveling the few blocks involved after the individual robberies and 8:00 A. M., under the authorities this testimony did not make a case on the issue of probable cause.

■ Actions for malicious prosecution are not favorites of the

law. [38 C. J. 385, sec. 2; Higgins v. Knickmeyer-F. R. & I. Co., 335 Mo. 1010, 1029, 74 S. W. (2d) 805, 814.] Among the reasons assigned therefor is a sound public policy under which the public's interest in peace and good order exact of an individual citizen for the benefit of the public at large certain requirements that citizens be not deterred by a fear of unpredictable consequences from a bona fide resort to the duly constituted authorities and tribunals for the vindication of the interests of society in matters of public justice.

The issues materially differ upon a prosecution for a criminal charge requiring a finding of guilt beyond a reasonable doubt and a civil action for malicious prosecution based upon want of probable cause for instituting the criminal action. Plaintiff's evidence made prima facie proof of probable cause and failed to rebut the same. Within the scope of the pleadings and proof, no evidence of sufficient probative value to overcome said prima facie case of probable cause was adduced upon the charged issue of false or perjured testimony by Fuhr or any agent of defendants, or even that defendants' witnesses did not have legally probable cause to believe or did not in fact and sincerity believe the facts they testified to were true. Any issue involving malice, none being shown, need not be considered. The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.