Edna Ruth COLE and State of Missouri
ex rel. Edna Ruth Cole, Plaintiffs,

v.

G. Joseph NEAF, an individual, G. Joseph
Neaf, Public Administrator for St. Lou-
is County, Missouri, and United States
Fidelity and Guaranty Company, a Cor-
poration, Defendants.

No. 62 C 346(2).

United States District Court
E. D. Missouri, E. D.

Aug. 15, 1963.

876

Richard B. Dempsey, Eaker, Dempsey, Heath & Dempsey, Clayton, Mo., for plaintiffs.

Donald J. Stohr, Asst. County Counselor, Clayton, Mo., for defendant Neaf, Public Adm'r.

Thomas Howe, Clayton, Mo., for defendants Neaf, individually and U. S. Fidelity & Guaranty Co.

MEREDITH, District Judge.

This unusual claim for malicious prosecution arises out of an equally unusual civil interpleader action in which the complainant here, Edna Ruth Cole, formerly Edna Ruth Bullock, as the named beneficiary on three life insurance policies issued to her deceased husband, James Bullock, prevailed as the successful claimant of the proceeds of the policies. Defendant G. Joseph Neaf is and was at the time of the original action the Public Administrator of St. Louis County, Missouri, and in that capacity took charge of the estate of Bullock and unsuccessfully claimed the proceeds of the policies in the interpleader action on the ground that Edna Ruth Cole was guilty of complicity in the murder of her husband, James Bullock. The instant

case was tried to the Court without a jury and this opinion embraces our findings of fact and conclusions of law.

James Bullock died on December 17, 1958, of gunshot wounds at the hands of parties unknown according to the Coroner of the City of St. Louis, Missouri. Plaintiff attended the inquest. Plaintiff was a prime suspect of the St. Louis police. She and James Bullock had been married only since June 28, 1958. Plaintiff was the named beneficiary on three policies of insurance on the life of Bullock of a total face amount of $64,000. Of this amount, $45,000 came from a policy issued by Prudential Life Insurance Company subsequent to the marriage; $14,500 came from two certificates under a group policy issued by the General American Life Insurance Company, and the remaining $5,000 came from a policy issued by the Aid Association for Lutherans, both issued prior to the marriage. On the latter two policies, Bullock's aunt, Gertrude Duerbeck, originally was the named beneficiary, but was replaced by plaintiff sometime after the marriage. Plaintiff and Bullock had resided in St. Louis County. Subsequent to Bullock's death, plaintiff, towards the end of December 1958 removed to her mother's home in Merriam, Kansas, and it is conceded that plaintiff became a resident of Kansas prior to January 9, 1959.

On January 8, 1959, defendant Neaf was appointed Public Administrator of St. Louis County and on that same date defendant United States Fidelity and Guaranty Company made and posted its public administrator's bond in the amount of $10,000. The following day on January 9, 1959, under his official bond defendant Neaf applied to the Probate Court of St. Louis County for letters of administration on the estate of Bullock. The public administrator is under a statutory duty to take charge of the estates of deceased persons who die intestate leaving an estate liable to be injured, wasted or lost when the decedent does not leave a known husband, widow or heirs in the state. 1959 MoRS §

473.743(5), V.A.M.S. Accordingly, defendant Neaf took charge of the estate, plaintiff not having so applied while a resident of the state. On becoming a resident of Kansas, she was disqualified. 1959 MoRS § 473.117, V.A.M.S.

On March 2, 1959, Bullock's aunt, Gertrude Duerbeck, filed petitions in the state court against General American Life Insurance Company and the Aid Association for Lutherans, praying that the change of beneficiary made by the insured be set aside on the grounds of fraud and the proceeds of the policies be paid to her. Plaintiff had demanded payment from General American on January 22, 1959, and had made claim on the Aid Association for Lutherans at the latest, sometime prior to March 16, 1959. Gertrude Duerbeck did not claim at any time the proceeds of the Prudential Life Insurance policy. That policy was issued subsequent to the marriage and plaintiff was the only beneficiary ever named thereon.

Prior to March 11, 1959, defendant Neaf conferred with the attorney for Prudential Life Insurance Company concerning payment of Prudential's policy, and on March 11, 1959, defendant Neaf filed a petition in the St. Louis County Probate Court seeking permission to file suit to enjoin Prudential from paying the proceeds of its policy to plaintiff for a period of one year or until the police investigation of the death of Bullock was completed. On March 12, 1959, plaintiff filed suit in federal district court against Prudential Insurance Company to compel payment of the proceeds of the policy to her. On March 13, 1959, Prudential filed its bill of interpleader alleging that plaintiff was claiming the proceeds and that defendant Neaf was about to seek an injunction under authority of the Probate Court to restrain Prudential from paying the proceeds to plaintiff. On March 16, 1959, Aid Association for Lutherans filed its bill of interpleader naming as claimants or possible claimants plaintiff Cole, defendant Neaf and Gertrude Duerbeck. Previously, on March 4, 1959, General American Insurance had filed a bill of interpleader naming as claimants or possible claimants plaintiff Cole, Defendant Neaf and Gertrude Duerbeck.

In answers on March 25, 1959, and April 7, 1959, respectively, to the interpleader actions of General American and Aid Association for Lutherans, defendant Neaf stated he "desires to claim any proceeds of insurance policies which should properly be included among the assets of the estate." On April 6, 1959, defendant Neaf answered Prudential's bill stating that "he believes defendant Edna Ruth Bullock, to be guilty of complicity in the intentional killing of James Stanley Bullock, deceased". On April 13th, 15th and 17th, 1959, three separate decrees of interpleader were entered by the Court in which each insurance company was discharged from further liability and in which defendants in the interpleader actions were enjoined from maintaining or instituting any suit against the respective insurance companies on account of insurance on the life of Bullock.

On April 22, 1959, defendant Neaf specifically made claim to the proceeds of the interpleaded funds as against plaintiff and Gertrude Duerbeck in the General American and Aid Association for Lutherans by amending his answer from "desires to claim" to "claims" and by alleging that plaintiff was guilty of complicity in the intentional killing of Bullock. Likewise, defendant Neaf amended his answer to the Prudential interpleaded fund by positively asserting a claim as against plaintiff on the ground she was disqualified because she "is guilty of complicity in the intentional killing" of Bullock. Ultimately, the three cases of interpleader were consolidated and the issues tried before the late Judge Weber. Defendant Neaf did not sustain his burden of proving plaintiff guilty of complicity in the murder of her husband and the interpleaded funds were awarded to plaintiff. This malicious prosecution action followed.

■ Actions for malicious prosecution in Missouri are not favorites of the

law. Kvasnicka v. Montgomery Ward & Co. (1942) 350 Mo. 360, 166 S.W.2d 503; Bonzo v. Kroger Grocery & Baking Co. (1939), 344 Mo. 127, 125 S.W.2d 75.

■■ The elements of a cause of action predicated on malicious prosecution require strict and clear proof. Higgins v. Knickmeyer-Fleer Realty & Investment Co., (1934) 335 Mo. 1010, 74 S.W. 2d 805; Bellington v. Clevenger, (Mo. App., 1950), 228 S.W.2d 817; Chicago Great Western Railway Company v. Robinson, (C.A. 8th, 1957), 243 F.2d 389. These elements are: (1) the commencement or prosecution of a criminal or civil proceeding against the plaintiff, (2) its legal causation by the present defendant, (3) without probable cause, (4) with malice, (5) which terminates in favor of the present plaintiff, (6) causing actual injury or damage to the present plaintiff. Hughes v. Aetna Ins. Co., (Mo. Sup., 1953), 261 S.W.2d 942; Kvasnicka v. Montgomery Ward & Co., supra; Bonzo v. Kroger Grocery & Baking Co., supra; Chicago Great Western Railway Company v. Robinson, supra.

With respect to the first element, plaintiff concedes and the evidence shows that defendant Neaf did not in any way commence or instigate the General American interpleader action. However, plaintiff contends that defendant Neaf's action in obtaining authority from the Probate Court to file injunction proceedings to restrain Prudential from paying the insurance funds to plaintiff was the efficient cause of Prudential's filing of the interpleader action which in turn precipitated the subsequent interpleader action by Aid Association for Lutherans. Prudential's attorney testified that Prudential was investigating plaintiff's claim and the circumstances surrounding Bullock's death. While Prudential had not flatly refused to make payment to plaintiff, Prudential was looking for a method to make payment under circumstances that would preclude a possible subsequent and second payment. We think the evidence is substantial that Prudential believed defendant Neaf was a potential claimant of the fund and it would be

purely speculative to assume that without the permission granted to defendant Neaf by the Probate Court, Prudential would not have filed the interpleader action. It was a factor but not the efficient cause of Prudential's commencement of the interpleader action. Even assuming that the authority obtained to enjoin Prudential was the cause of its bill of interpleader, there is no evidence whatsoever that the injunction permission obtained was without authority or that defendant Neaf was without probable cause in obtaining permission for such proceedings from the Probate Court. Therefore, whatever reaction by Prudential to the Probate Court authority granted defendant Neaf cannot be laid at the latter's door. Further, the evidence does not justify our speculation on what disposition the federal court might have made with respect to the Prudential interpleader if defendant Neaf had not filed his answer of April 6, 1959.

The evidence showed that defendant Neaf had not asserted a claim to the proceeds of the Aid Association for Lutherans' policy prior to the commencement of the interpleader action and that, at that time, Gertrude Duerbeck's suit against Aid Association for Lutherans already was pending in the state court. The fact that Lutherans' bill followed Prudential's bill is insufficient to support a finding that defendant Neaf instigated the Lutherans' interpleader because he allegedly instigated the Prudential bill.

Thus, we find that defendant Neaf did not instigate or commence any of the three original interpleader actions. Plaintiff urges that even though defendant Neaf may not have commenced the original interpleader actions, the effect of the filing of his amended answers thereto constituted commencement of litigation in the opening of the second stage of an interpleader action, i. e., after the stakeholder had been dismissed, the action takes the form of litigation between the various claimants who allege and prove the basis of their claims against each other. Neither counsel nor our own independent research has revealed any

precedent with respect to this proposition.

■ Having studied the matter, we are unable to conclude that as a matter of law that if a claimant to an interpleaded fund asserts a claim as against other claimants, that this constitutes commencement of litigation on which a malicious prosecution action can be based. We have reached this conclusion because of the repeated statements in Missouri decisions that a malicious prosecution action is no favorite of the law and the policy reasons underlying that principle. In the absence of a decision by the Missouri courts that such an action will lie, we are reluctant to inaugurate such a precedent. Assuming, however, that the claim of the interpleaded party would constitute a commencement of litigation, we are of the opinion that necessarily the unsuccessful claimant's position, as of the time he claims the interpleaded proceeds in the so-called second stage of the interpleader proceeding, must be given weighty consideration as bearing on the issues of probable cause and malice. At this juncture in the interpleader action a default by a claimant will forever bar him to any later claim to the fund.

However, before directly turning to the issues of probable cause and malice, there is another matter with respect to the first element that arose on trial and in after-trial motions. Paragraph 12 of plaintiff's complaint alleged:

"From the time of the filing of said interpleader and up until the time this Court tried the issues raised by defendant G. Joseph Neaf, defendant G. Joseph Neaf maliciously and without probable cause persisted in asserting a claim to the said interpleaded funds even after defendant G. Joseph Neaf knew that he could not produce evidence in support of his claim, all with intent to injure plaintiff, Edna Ruth Cole."

Defendant made an offer of evidence to show probable cause up to and through the time of trial. Plaintiff objected on the ground that wrongful continuance after April 22, 1959, had been abandoned and thereupon amended her complaint to delete paragraph 12. Proof on the issue of probable cause was accordingly restricted up to April 22, 1959, at which time defendant had filed his amended answers in the interpleader action.

Paragraph 13 of the instant amended complaint alleged that defendant Neaf maliciously filed the affidavit of one Thomas Patrick Murphy in the interpleader action knowing that he was an unbelievable witness and that the statements of the affiant were false, untrue and concocted. After trial plaintiff moved to re-amend her complaint to conform with the evidence by deleting paragraph 13 and substituting in lieu thereof the following allegation:

"Following the filing of all three interpleader suits by the insurance companies, the defendant G. Joseph Neaf, wrongfully caused said actions to be continued *and wrongfully thereafter* continued said actions." (Emphasis supplied.)

What plaintiff seeks to do here is to base malicious prosecution on wrongful continuation throughout the trial of the interpleader action. Under such theory, evidence on the issue of probable cause would arise anew for each day of the litigation. This is, at best, an extremely doubtful proposition at law. Plaintiff cites Mannisto v. Rainen Furniture Company, (Mo.App., 1956), 295 S.W.2d 841, where the Court speaks of the first element of a malicious prosecution action as previous litigation "instituted or continued" by defendant. We cannot attach significance to that language because the case is based on plaintiff's rebuttal evidence of defendant's fraud in securing a judgment of garnishment which was essential in order to make a submissible case. Ripley v. Bank of Skidmore, (1947) 355 Mo. 897, 198 S.W.2d 861, offers doubtful support for plaintiff's position inasmuch as that case involved another general proposition of law, i. e. repeated civil proceedings on the same matter may constitute a basis for malicious prosecution. Further, reliance is placed on a

case originally cited by defendant, Blunk v. Atchison, T. & S. F. R. Co. (C.C.Mo., 1889), 38 F. 311. The narrow confines contained in that charge to the jury with respect to a Kansas larceny prosecution is not applicable here.

■ At the time of the trial the Court allowed in evidence the opinion of Judge Weber in the interpleader action and the answers of defendant to plaintiff's interrogatories. Both were made subsequent to April 22, 1959. The opinion was properly admissible as establishing the fifth element of a malicious prosecution action. The interrogatories and their answers were properly admitted on the issue of probable cause containing as they do information with respect to defendant Neaf's knowledge of events both prior and subsequent to April 22, 1959. We do not find that the admission of these documents without objection necessitates the proposed amended pleading. Under plaintiff's proposed amended pleading on the instant facts, defendant would be precluded from showing probable cause on the wrongful continuation while plaintiff would be permitted to base its case on malicious prosecution at any time during the trial of the interpleader action. At the time of trial, on plaintiff's motion the Court excluded the transcript of testimony of Aline Neiman, Fontaine Johnson and James Lavely at the interpleader trial on the theory that there was no showing at the time defendant filed his amended answers that he had knowledge of the facts to which these three persons would testify. Plaintiff has renewed this motion and it is again sustained. However, plaintiff's motion to amend the pleadings to make a substitution for paragraph 13 will be overruled since the wrongful continuation theory as contended for by plaintiff is an extremely doubtful proposition of law in Missouri and since plaintiff agreed at trial to restrict proof of probable cause to the time of filing of the last amended answer on April 22, 1959. This restriction of proof on probable cause, of course, does not, as contended by defendant Neaf restrict the evidence on the issue of damages to the damages incurred prior to April 22, 1959. It is basic that one of the elements of a malicious prosecution action is the termination of the previous litigation in the present plaintiff's favor and damages would include all that followed from defendant's alleged wrongful act in instituting the second stage of the interpleader proceeding.

Turning now to the third element of this malicious prosecution action: As the administrator of the estate of Bullock, was defendant Neaf's claim to the proceeds of the policies based on the named beneficiary's alleged disqualification because of complicity in the murder of the insured, without probable cause?

■ At the time defendant Neaf filed his answers and amended answers he had conferred with various members of the St. Louis Police Department concerning their investigation and he had read the testimony of the coroner's inquest. He had obtained the following information: (1) Plaintiff had admitted telling some untruths about pertinent facts under investigation; (2) Plaintiff had made inconsistent statements and there were inconsistencies between her testimony and that of Dr. Engelman; (3) Police had evidence of the promiscuous conduct of plaintiff; (4) Plaintiff moved to Kansas shortly after the coroner's inquest and was not readily available for interrogation by police; (5) Police had knowledge that plaintiff had made statements prior to her marriage to Bullock that she was going to marry a wealthy man who would not live long after the marriage; (6) Bullock lived less than six months after the marriage. Defendant Neaf at the time of filing his answers and amended answers did not know the parties with whom plaintiff was supposed to have conspired to murder and did not know what acts she did to effect the conspiracy. We cannot say as a matter of fact that defendant Neaf honestly believed that plaintiff was guilty of the facts charged. It further appears to this Court that plaintiff made a prima facie showing of want of probable cause when it appeared that plaintiff had been nei-

ther charged nor indicted in connection with the killing of Bullock.

In Stubbs v. Mulholland (1902) 168 Mo. 47, 67 S.W. 650, 651, the discharge of a prisoner upon preliminary hearing involving a penitentiary offense was prima facie evidence of lack of probable cause. The ignoring by a grand jury of a bill against plaintiff in Ambs v. Atchison, T. & S. F. R. Co. (C.C. Mo., 1899), 114 F. 317, constituted prima facie evidence of want of probable cause. Both are analogous if not in point because based on previous criminal proceedings. In spite of that difference we think it follows that in a malicious prosecution action predicated on preceding litigation which is civil in form and substance, but contains strong elements of criminal charges, the failure of proper officials to charge or for the grand jury to indict is likewise prima facie evidence of want of probable cause. We are further of the opinion that the prima facie evidence of probable cause has not been rebutted by defendant Neaf except as it bears on the question of malice. While plaintiff correctly states that malice may be inferred from want of probable cause, Stubbs v. Mulholland, supra; explained in Kvasnicka v. Montgomery Ward & Co., supra, still "[t]he inference of malice from want of probable cause is one of fact to be drawn by the jury, but the jury are not required to find it merely because they find want of probable cause." Randol v. Kline's Incorporated (1929) 322 Mo. 746, 18 S.W.2d 500. Acting as public administrator, defendant Neaf was under a duty to protect the assets of the estate of Bullock. At the time he filed his answers and amended answers he honestly believed the St. Louis police had a case and that plaintiff would stand trial on a criminal charge. As it turned out, he was mistaken, but he was mistaken at a time when he had to elect between making a claim to the insurance proceeds or foregoing it forever. The criminal overtones of the civil interpleader action cannot be ignored, but neither can defendant Neaf's honest understanding and undertaking in the performance of his duty to collect the assets of the estate. We cannot, as plaintiff would have us, infer malice from the fact that defendant Neaf stood to gain fees if the estate had obtained the proceeds of the insurance. As the trier of fact, we are unable to infer or find any evidence of malice on the part of defendant Neaf. Necessarily, judgment must issue for defendant for an action for malicious prosecution cannot be sustained, unless there is a finding of malice. Randol v. Kline's Incorporated, supra.