GEORGE STEPPUHN, Respondent, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 29, 1918.

1. **MALICIOUS PROSECUTION: Railroads.** The plaintiff sued to recover damages, actual and punitive, for false arrest and malicious prosecution by the defendant. The plaintiff, the night and seal clerk for the defendant, assisted one Rhoades, also an employee, to repair a car door as ordered by their foreman, and after the repairs were made he undertook to reseal the car as instructed. While in the act of doing so, he was arrested by two special officers of the defendant and placed in jail, the officer claiming that plaintiff had stolen some merchandise. The plaintiff and Rhoades were indicted by the Federal grand jury but acquitted by the jury when placed on trial. *Held*, that the plaintiff was entitled to recover damages for false imprisonment on the first count of his petition.

2. ———: Indictment: **Prima-Facie Evidence.** Indictment by a grand jury is prima-facie evidence of the existence of probable cause, unless such evidence is overcome by evidence showing that the indictment was obtained by false or fraudulent testimony, or through improper means, or by evidence showing that defendant through its agents, notwithstanding the action of the grand jury, did not believe defendant to be guilty.

3. ———: ———: **Verdict.** A verdict in favor of plaintiff in a malicious prosecution suit establishes the truth of plaintiff's contention that he was lawfully on defendant's premises discharging his duties as an employee at the time of the arrest and refutes defendant's contention that he was on such premises burglarizing a car and the jury having found these facts for plaintiff, such finding amounts to a further finding under the facts in this case that defendant's agents knew that they were testifying falsely before the grand jury when the indictment was obtained by them.

4. ———: ———: **Jury.** While there was no direct evidence that defendant's agents testified before the grand jury, *held*, that the facts and circumstances were such for the jury to say that they did so testify and that the testimony given was false.

5. ———: **Judgment.** Where a purported judgment of a committing magistrate of a State court, on its face, shows a form with blanks reserved for inserting material things necessary to a judgment, with nearly all the blank spaces unfilled, including most of the dates,

and concluded "turned over to the Federal authorities," *held*, the alleged judgment was so indefinite that it cannot be considered a judgment.

6. ———: **Preliminary Examination.** The fact that plaintiff waived preliminary examination before the U. S. Commissioner was not a confession of probable cause for plaintiff's arrest. (The case of Vansickle v. Brown, 68, Mo. 627, explained.)

7. ———: ———: **Question for Jury.** Whether the right of an employee to safeguard the company's property also includes the right to make an arrest is a question for the jury to determine.

8. **INSTRUCTIONS: Impartial Attorney.** An instruction which tells the jury that to entitle the defendant to avail itself of advice of counsel as a defense to the second and third counts of plaintiff's petition, it must be shown that the defendant in good faith sought the advice of an attorney, and at the time of doing so believed said attorney to be *impartial*, where such attorney was one regularly employed by defendant, is erroneous.

9. ———: **Instructions.** An instruction which assumed that one is the agent of a defendant and acting within the scope of his employment is erroneous, but where the defendant joined in the same error it is not entitled to complain.

Appeal from Jackson Circuit Court.—*Hon Daniel E. Bird*, Judge.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

*Robinson & Goodrich* for respondent.

*Warner, Dean McLeod & Langworthy* and *Roy B. Thomson* for appellant.

BLAND, J.—This is a suit for false imprisonment and malicious prosecution. Plaintiff having recovered a verdict and judgment, defendant has appealed. The suit was originally against this defendant and the Chicago, Milwaukee and St. Paul Railway Company but was dismissed as to the latter at the close of the evidence.

The facts show that on October 24, 1914, plaintiff was in the employ of defendant as a night yard or seal clerk. At about 6:30 P. M. of that day one

J. C. Rhoades, who was a car repairer in the employ of the defendant, was instructed by one Ray Hamm, car inspector under whom plaintiff and said Rhoades were employed, to nail up a missing end door of a car containing freight in defendant's yards at Council Bluffs, Iowa. Pursuant to the instructions given, Rhoades procured some boards and tried to nail up the end door from the outside but was unable to do so and informed Hamm of that fact, thereupon, the latter told Rhoades to break the seal on the side door, enter the car and nail up the end door from the inside, and after finishing the work to have plaintiff reseal the side door. These instructions were followed by Rhoades. After having nailed up the end door he tried to close the door through which he had entered but on account of a defective hanger could not close it without assistance, so he went along the track a distance of four to six car lengths where he found plaintiff checking the train, who assisted Rhoades in closing the door. Then, in pursuance of Hamm's instructions communicated to him by Rhoades, plaintiff undertook to seal the car and while in the act of so doing he and Rhoades were arrested about 8:00 o'clock of that evening by Messrs. Hall and Burke; the former being described in the evidence as a special agent whose duty it was to safeguard the company's property, and from the evidence we conclude that his work, was in the nature of that of a private detective for the defendant, the latter being a special officer in the employ of the Chicago, Milwaukee and St. Paul Railway Company with a police officer's commission. These special agents or detectives took plaintiff and Rhoades to the freight depot where the latter were questioned and then put them in jail, where they remained until about 10:00 o'clock the next morning.

The next day Hall consulted attorneys representing defendant at Council Bluffs in reference to the advisability of prosecuting plaintiff and Rhoades, and these attorneys advised prosecution. Thereupon, they

drew up a complaint against plaintiff and Rhoades charging them with breaking and entering a railroad car contrary to the laws of the State of Iowa, which was filed in the superior court of Council Bluffs, Iowa, the judge of that court being an *ex-officio* police judge and committing magistrate. They were arraigned in this court on October 23rd, and at the request of defendant's representatives the case was continued until the following day. In the meantime Hall and the company's attorneys had taken steps toward a proceeding before the United States Commissioner at Red Oak, Iowa, charging plaintiff and Rhoades with unlawfully breaking and entering a railroad car containing merchandise in interstate transit. And on the 24th day of October, 1914, these attorneys filed an affidavit and complaint before said commissioner, sworn to by Hall, making such charges against the plaintiff and Rhoades. When the State case was called on said 24th day of October, 1914, in the superior court at Council Bluffs, Hall announced that he was going to prosecute plaintiff and Rhoades in a court where they had no "pull," meaning the federal court, and the proceedings before the superior court were not pursued by the company's representatives. On October 24, 1914, plaintiff and Rhoades waived preliminary examination before the United States Commissioner and were bound over to the federal grand jury, giving bonds fixed by the Commissioner. Thereafter they were indicted by the United States grand jury on the charge of conspiracy to violate an act prohibiting the stealing of freight, etc., from cars containing interstate shipments, and upon the trial of such charges in the United States District Court were acquitted. Thereafter they brought suits in the circuit court of Jackson County, Missouri, for false imprisonment and malicious prosecution.

Plaintiff's petition was in three counts; the first count asking damages for false imprisonment; the second count asking damages for malicious prosecution before the superior court at Council Bluffs; and

the third count for malicious presecution before the United States District Court. The jury returned a verdict in the sum of forty-five hundred ($4500) dollars actual damages and five hundred ($500) dollars exemplary damages on the first count; and for twelve hundred ($1200) dollars actual damages and eight hundred ($800) dollars exemplary damages on the second count, and for one thousand ($1000) dollars actual damages and five hundred ($500) dollars exemplary damages on the third count. Defendant filed a motion for a new trial which was overruled as to the first and second counts and sustained as to the third count, and thereupon plaintiff dismissed his suit as to said third count. This appeal is from the verdict and judgment obtained on the first and second counts.

According to defendant's evidence, because of numerous depredations committed by thieves on defendant's property and that of the Chicago, Milwaukee and St. Paul Railway Company, Hall and Burke were making a special effort to guard the property and at the time of these arrests they were engaged in watching for car robbers on defendant's premises and had hidden in the shadow of a sand pile, from which point they saw plaintiff and Rhoades take two boxes of prunes out of the car and then take them several feet away from the car in order to hide them, whereupon the arrests were made. Thereafter they took plaintiff and Rhoades, together with the boxes of prunes, to defendant's depot where plaintiff and Rhoades stated before some employees of the defendant that they were guilty of stealing the merchandise. Plaintiff and Rhoades denied stealing the prunes and the making of the alleged damaging admissions.

It is the contention of the defendant that instead of the proceedings in the superior court having been discontinued by its agents, the judge of that court found plaintiff and Rhoades guilty and turned them over to the federal authorities. This contention is based upon an entry or judgment contained in the

records of that court. From an examination of this so-called judgment we are satisfied that it shows on its face that there was no intention to enter any judgment whatever against plaintiff and Rhoades. On its face it simply shows a form with blanks reserved for inserting material things necessary to a judgment with nearly all of the blank spaces unfilled, including most of those for dates. This alleged judgment concludes as follows: "————it is considered, ordered and adjudged that defendant ———— is ———— guilty as accused ————. Turned over to federal authorities." The blank before guilty is evidently for the purpose of inserting the word "not" in case it was found that defendants were found not guilty. The alleged judgment on its face shows that most of the blanks where material insertions were required were not filled in. This alleged judgment is so indefinite in its terms that it cannot be considered as a judgment. [1 Black on Judgments (2 Ed.), section 3] The deposition of the judge of the superior court was taken and he testified that the final disposition of the case in that court was that it was reported to him that the case had been taken up to the federal court and there was nothing done in the superior court any more than that the case was discontinued. Defendant did not contradict this by anything except the alleged judgment. There is no showing that the superior court of Iowa had any authority to bind persons over to the "federal authorities," whatever that may mean.

It is the contention of the defendant that the indictment by the federal grand jury is prima-facie evidence of the existence of probable cause. Such is true unless such prima-facie case is overcome by evidence showing that the indictment was obtained by false or fraudulent testimony, or through improper means, or by evidence showing that defendant through its agents, notwithstanding the action of the grand jury, did not believe defendant in that case to be guilty. [Sharpe v. Johnstone, 76 Mo. 660; Peck v.

Chouteau, 91 Mo. 138; Firer v. Lowery, 59 Mo. App. 92; Wilkinson v. McGee, 265 Mo. 574.]

It is the contention of the defendant that there is no evidence on the part of plaintiff to overcome the prima-facie case made by the showing of the indictment, defendant claiming that there is no show-that defendant or any of its agents or employees appeared before the grand jury at the time the indictment was returned or had anything whatever to do with the procurement of the same. We are unable to agree with this contention. The evidence shows that the attorneys for defendant advised the taking of the case to the United States Court, that these attorneys prepared the information for the federal commissioner, which was sworn to by Hall, and that Hall was subpoenaed as a witness before the commissioner. The record shows that Hall and other representatives and agents of the defendant were very active in the prosecution of plaintiff and Rhoades. Hall not only assisted in the arrest but he went to the company's attorneys to get their advice and assistance in the matter of instituting the proceeding before the superior court, and afterwards he, together with the company's attorneys, started the prosecution in the federal court. While there is no direct evidence that Hall and other employees of the defendant testified before the grand jury, the circumstances all point to the fact that they did. So there was evidence, though circumstantial, that they did so testify. It is difficult to see how there could have been an indictment without the testimony of such parties.

We think the evidence introduced on the part of plaintiff, if believed by the jury, sufficiently rebuts the prima-facie showing of probable cause made by the defendant in proving the indictment. As stated supra, such a prima-facie showing may be rebutted by proof that the indictment was obtained by false or fraudulent testimony, or by a showing that not-

199 M. A.—37.

withstanding the action of the grand jury, defendant in this case through its agents did not believe the defendant to be guilty. The evidence on behalf of plaintiff in reference to what occurred immediately before and at the time of the arrest is plain and clear cut. The evidence on the part of the defendant in reference to these matters was likewise clear cut, and if it is to be believed, plaintiff was rightfully arrested, and, of course, could not maintain this action. There could have been no mistake on the part of Hall and Burke as to what occurred at the scene of the arrest. If plaintiff's evidence is to be believed, and the jury in this case did believe it, then the testimony given by Hall and Burke that plaintiff and Rhoades stole two boxes of fruit from the car was false and there was no ground whatever for plaintiff's arrest.

The jury having found for plaintiff in this case, we must assume that the indictment was obtained through false testimony, for, had the true facts as testified to by plaintiff and Rhoades been stated to the grand jury, there could have been no possible grounds for such indictment, and, of course, there would have been none. And in addition to this, the jury having found plaintiff's version to be true and defendant's to be untrue, they must have found that Hall knew that plaintiff was not guilty at the time of the arrest, but had made the arrest in order to make an example of someone or for some other reason of that nature.

Plaintiff's evidence, if believed, was sufficient to overcome any unfavorable inference or presumption against plaintiff that grew out of the indictment. The fact that plaintiff waived preliminary examination before the United States Commissioner amounted to no more than had the commissioner found that there was probable cause to believe him guilty and had bound him over. By waiving the preliminary examination plaintiff admitted that it was in defendant's power (by false testimony perhaps) to make it appear to the Commissioner that there was probable cause for his

Steppuhn v. Railroad Co.

arrest, but he did not admit that there was in fact probable cause. A binding over by the commissioner would have affected the matter of probable cause exactly the same as did the indictment, consequently a showing that plaintiff waived the preliminary hearing helps defendant no more than the showing of the indictment of the grand jury. [Sharpe v. Johnson, supra; Vansickle v. Brown, 68 Mo. 627.] Of course, where a preliminary examination is waived the case of probable cause made thereby cannot be overcome by a showing of false or fraudulent testimony, as no testimony of any kind was given, but it may be overcome by showing that the prosecutor knew there was no guilt or that thereafter he fraudulently procured the indictment. Defendant makes much of the statement in the opinion in the case of Vansickle v. Brown, supra, appearing at page 637 thereof, "waiving an examination and voluntarily entering into recognizance amounts to a confession by the accused that there is probable cause." This statement by the learned judge who wrote that opinion must be taken in connection with the facts and circumstances under which said statement was made. It seems plain to us that the judge who wrote that opinion meant to say nothing more than if it is shown that there has been a waiving of a preliminary examination and a voluntary entering into a recognizance, a prima-facie case of probable cause is made, and that unless plaintiff introduces evidence to overcome this prima-facie case, then such failure would amount to a confession on the part of the plaintiff that there was probable cause.

It is contention of defendant that if Hall arrested plaintiff under the circumstances claimed by plaintiff, or if he intentionally swore falsely before the grand jury, that he was not acting within the scope of his authority but was pursuing his own ends, for his conduct in these matters could not have been for the purpose of serving defendant in any way and must have been founded upon some personal grudge or ill feel-

ing, or other personal matter between Hall and the plaintiff.

There is no evidence whatever that Hall was pursuing his own personal ends at the time the arrest was made. He testified that his duties were to safeguard the company's property; that the company had suffered a great many depredations on the part of thieves, and his testimony shows that he was making a special effort to catch a thief or thieves and to discourage further depredations. The evidence shows that Hall reported what he had done about arresting plaintiff and Rhoades, and what he had done toward assisting in their prosecution, to the defendant's superintendent at Clarion, Iowa, and that no objection was made by the defendant or any of its agents to what he was doing or had done. In addition to this, he conferred with the company's attorneys at Council Bluffs, Iowa, and these attorneys assisted Hall in the prosecution. Whether the particular act of the servant was committed in the scope of his employment is often a difficult question and is frequently one of fact to be determined by the jury under all the facts and circumstances. It cannot be determined by any fixed rule but it is rather to be ascertained by the nature of the act, purpose and all the facts connected therewith. If the act is necessary to the accomplishment of the object of his employment or is intended for that purpose, then it may be within the scope of the employment even if in the method of performing the act the servant actually violated instructions or orders. We think that the question as to whether Hall was acting within the scope of his employment was one for the jury. He was employed for the purpose of safeguarding the company's property; he made the arrest and reported to the company and no objection was made by it to his conduct. Whether the employment to safeguard the company's property included the right to make an arrest, and to make one under the circumstances of this case, was clearly one for the jury. [Fellhauer v. Railroad Co., 191 Mo.

App. 137; Chandler v. Gloyd, 217 Mo. 394; Payne
v. Mo. Pac. Ry. Co., 105 Mo. App. 155.]   Under the
facts in this case defendant's connection with the prose-
cution, we think, is clearly established.   [Carp v.
Ins. Co., 203 Mo. 295.]

Defendant complains of the giving by the court
of plaintiff's instruction No. 8, which told the jury
that to entitle defendant to avail itself of advice of
counsel as a defense to the second and third counts of
plaintiff's petition, it must be shown that the defend-
ant in good faith sought the advice of an attorney,
and that at the time of doing so believed said attorney
to be *impartial*.   Plaintiff admits that he has been un-
able to find any case where it is held that an attorney
to be consulted must be *impartial*. The rule is stated
in Sharpe v. Johnston, supra, l. c. 670, that where the
examining magistrate refused to commit or where
there has been an acquittal,—

"and it is thus determined that there is no proba-
ble cause for the prosecution, any inference of mal-
ice which may be drawn from such fact, will be over-
come by showing that the prosecutor, after having
fully informed himself as to all ascertainable facts
bearing upon the guilt or innocence of the plaintiff,
and having fully and fairly communicated the same
to reputable counsel, instituted the prosecution under
the opinion of such counsel that plaintiff was legally
subject to a criminal charge, and himself believed such
advice to be correct and that the plaintiff was guilty.
That is what is meant by consulting counsel, and in-
stituting a prosecution in good faith."

There is no suggestion in this rule that the at-
torney consulted must be an *impartial* one.

The evident purpose of plaintiff in using the term
impartial was to have the jury find that because Hall
consulted the regular attorneys for defendant instead
of going to some other attorney, Hall was not acting
in good faith and had not consulted such an attorney
as the law provides that the party under the circum-
stances may consult in order to exculpate himself.

It goes without saying that a party may not consult an attorney whom he knows to entertain a feeling of ill will or hatred toward the party to be prosecuted, or under any circumstances would amount to lack of good faith. That he may consult his regularly employed attorneys, if he does so in good faith, we think there can be no question. If one has a regularly employed attorney and any matter comes up wherein the advice of an attorney is necessary, it is but natural that he consult that attorney. Of course, this is constantly done. We do not think it was proper to submit an instruction to the jury which permitted them to find that defendant was not entitled to the favorable inferences awarded it by reason of its agent consulting and laying all the facts before reputable attorneys (provided this was done), because these attorneys happened to be regularly employed, at least in the absence of a showing of lack of good faith. We think the instruction under the circumstances was erroneous and necessitates the reversing and remanding of the cause as to the second count.

Defendant complains of the giving of instructions on the part of plaintiff that assume that Hall was an agent acting within the scope of his employment. We think that these instructions make this assumption, but as the defendant joined in the error in its instructions D and G, wherein a similar assumption is made, it is not now entitled to complain on this score.

Defendant complains that the verdict is excessive. It is not necessary for us to pass upon the excessiveness of the verdict on the second count as the cause as to that count is reversed and remanded. The verdict on the first count was for forty-five hundred ($4500) dollars actual and five hundred ($500) dollars exemplary damages. The evidence shows that plaintiff was detained for twenty-four hours before being released on bond; that upon his arrest he was searched and put in a place which plaintiff describes as a hole in the basement on the ground floor of the jail; that the cell was poorly ventilated and lighted and had no

beding of any kind so that he had to lie upon a couple of steel shelves, and that the place was dirty and filthy and infested with insects. The evidence discloses no reason why plaintiff could not have been arraigned before the superior court and permitted to give bond before he was actually arraigned. The verdict is a large one but in cases of this character the amount of damages is largely a question for the jury. Numerous considerations must necessarily enter into the question as to what is just compensation in such a case, but no definite rule can be laid down as to any of them. The law has provided that the jury shall decide this . question. Disgrace is a relative term. What is such to one man is not necessarily so to another. Mental anxiety and pain caused thereby and humiliation and danger from a prosecution for a grave criminal offense, are all conditions for the jury, as well as . the jeopardy in which the liberty of the plaintiff was placed by such prosecution. We are unable to say, in view of all the circumstances, that the verdict was excessive. [Carp v. Ins. Co., supra.]

The judgment is affirmed as to the first count but reversed and remanded as to the second count. All concur.